UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CONSUMER FINANCIAL PROTECTION
BUREAU,

      Petitioner,

v.

HARBOUR PORTFOLIO ADVISORS,
LLC; NATIONAL ASSET ADVISORS, LLC;
and NATIONAL ASSET MORTGAGE,
LLC;

      Respondents.
                                       /

Case No.16-14183

Honorable Nancy G. Edmunds

**OPINION AND ORDER GRANTING PETITION TO ENFORCE CIVIL INVESTIGATIVE DEMANDS [1]**

On November 29, 2016, Petitioner Consumer Financial Protection Bureau (the "Bureau") petitioned this Court to enforce Civil Investigative Demands ("CIDs") that the Bureau issued to Respondents on September 8, 2016. (*Id.*) For the reasons that follow, the Bureau's petition is GRANTED.

**I.    Background**

The Bureau is a federal agency that regulates the provision of consumer financial products and services. 12 U.S.C. § 5491(a). Its functions include investigating and enforcing violations of federal consumer financial laws. *Id.* § 5511. As part of an investigation, the Bureau may issue CIDs, a form of administrative subpoena that can direct recipients to produce documents, other materials, answers, or oral testimony. *Id.* § 5562(c). The Bureau is now before the Court because it issued CIDs to Respondents, and Respondents refused to comply. The Bureau seeks an order requiring compliance.

The main issue here, according to Respondents, is whether the Bureau's investigative authority extends to Respondents' selling, marketing, and servicing of a financial product called an Agreement for Deed ("AFD"), also called a "contract for deed" or a "land installment contract." (Dkt. 13-1; Dkt. 1-6.) Respondents are involved with AFDs as follows: Respondent Harbour Portfolio Advisors, LLC ("Harbour") purchases foreclosed properties and resells them to consumers through AFDs. (Dkt. 13, at 1-2.) Respondent National Asset Advisors, LCC ("NAA") manages and markets, among other properties, residences that Harbour sells through AFDs. (Dkt. 14, at 4.) And Respondent National Asset Managers, LLC ("NAM") is a mortgage provider and collector of installment payments that services Harbour's AFDs. (*Id.* at 4-5.)

An AFD itself is a written agreement to purchase residential property, whereby the seller agrees to deliver a deed to the purchaser upon full payment of the purchase price. (Dkt. 13-1, at 6.) Respondents have submitted two versions of the AFDs used by Harbour. (*See* Dkt. 13-1.) Respondents claim that Harbour began to "phase out" the first AFD in November 2014 and now uses the "revised" version. (*Id.* at 3.) The biggest difference between the two is that the first AFD includes an accompanying promissory note that contains an acceleration clause, while the revised AFD includes no such note. Otherwise, their terms are largely the same.

In both the original AFD and the revised version, the purchase price is fixed and amortized over a number of years, with interest accruing on the outstanding balance at a fixed rate. (*Id.* at 6, 14.) The purchaser's obligations include a down payment, followed by monthly payments for the term of the AFD until the full purchase price is paid. (*Id.* at 6, 14.) Furthermore, the purchaser agrees to pay property taxes and keep the property insured

throughout the AFD's duration. (*Id.* at 6, 15-16.) If the purchaser chooses to stop making payments or defaults on its obligations, then the seller may terminate the AFD and retain the previous payments in full satisfaction and liquidation of all damages. (*Id.* at 7, 14.) The seller remains the legal owner until the purchase price is paid. (*Id.* at 8, 16.)

According to Respondents, neither version of the AFD involves a loan or debt, and the purchaser is never obligated to pay the full purchase price. However, as stated above, the first AFD is accompanied by a promissory note that includes an acceleration clause. (*Id.* at 10.) Such a clause causes the full price to become due and payable if the purchaser misses a payment and the seller chose to exercise the clause. (*Id.*) And while Harbour's Manager filed an affidavit stating that Harbour has never sought to exercise the acceleration clause (*id.* at 4), the Bureau has submitted evidence that suggests otherwise. (*See* Dkt. 16-2.) This evidence includes pleadings from a Florida lawsuit where Harbour alleges that it made a "loan," describes its transaction documents as "Loan Documents," asserts that a "Note was in default and accelerated," and demands payment of unpaid principal, interest, and other fees. (*Id.* at 9-10.)

The Bureau first heard testimony regarding Harbour's financial products and services in May 2016, when Harbour's Manager responded to a CID that is not at issue here. (Dkt. 1-2.) Four months later, the Bureau served Respondents with the CIDs currently before the Court. These CIDs bear the stated purpose of "determin[ing] whether investment firms or other unnamed persons have been or are engaging in unlawful acts or practices relating to the marketing, offering, servicing, or collection of loans for the purchase of residential properties, or similar products and services[.]" (Dkt. 1-7; Dkt. 1-8; Dkt. 1-9.)

After Respondents received the CIDs, counsel for the Bureau communicated over telephone with counsel for each Respondent to discuss compliance. (Dkt. 1-3 at ¶¶ 9, 11.) All three Respondents indicated that they would not comply because they believed that the Bureau exceeded its authority in issuing the CIDs. (*Id.*) Each Respondent then filed a petition with the Bureau to set aside the CIDs. (*Id.* at ¶¶ 10, 12.) Around a month later, the Bureau's Director denied Respondents' petitions and ordered them to comply with the CIDs within 10 days. (Dkt. 1-8; Dkt. 1-9.) As of November 29, 2016, Respondents still had not complied, so the Bureau filed this petition seeking enforcement. On December 1, 2016, the Court ordered Respondents to show cause why the Court should not grant the petition. Both sides then submitted briefs, and the Court held a hearing on the matter. Now the Court is prepared to grant the Bureau's petition.

## II. Applicable Standard

While a district court "is not a 'rubber stamp' for agency demands for the production of information," its role in deciding whether to enforce CIDs is limited. *United States v. Markwood*, 48 F.3d 969, 979 (6th Cir. 1995) (applying the test for enforcing administrative subpoenas to CIDs because a CID is "at its essence, a subpoena issued by an administrative agency"). In the Sixth Circuit, a CID is "properly enforced" so long as (1) it satisfies the terms of its authorizing statute; (2) the materials requested are relevant to the agency's investigation; (3) the information sought is not already in the agency's possession; and (4) enforcing the subpoena will not constitute an abuse of the court's process. *Doe v. United States*, 253 F.3d 256, 265 (6th Cir. 2001).

### III. Analysis

Respondents oppose enforcement of the CIDs on three grounds. First, Respondents argue that the Bureau exceeded its statutory authority in issuing the CIDs. Second, Respondents argue that they did not receive fair notice that AFDs are covered by federal consumer financial laws. Third, Harbour individually argues that, if the Bureau does have the authority to issue the CIDs, the CID issued to Harbour should be modified because it is unduly burdensome. For the following reasons, the Court rejects all three arguments and grants the Bureau's petition to enforce the CIDs.

#### A. The Bureau's Authority to Issue the CIDs

Under its authorizing statute, the Bureau may issue CIDs to "any person" who *may* have information "relevant to a violation" of "Federal consumer financial law." 12 U.S.C. § 5562(c)(1). "Federal consumer financial law" includes the Consumer Financial Protection Act ("CFPA"), 12 U.S.C. § 5481 *et seq.*; the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.*; and the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. §§ 1691-1691f.

Respondents contend that the Bureau exceeded its authority by issuing the CIDs because an AFD is not a "credit" transaction under the CFPA, TILA, or ECOA. Under all three statutes, "credit" includes the right granted to a consumer to defer payment of a debt. *See* 12 U.S.C. § 5481(7); 15 U.S.C. § 1602(f); 15 U.S.C. § 1691a(d). Respondents argue that an AFD does not involve "credit" because it is "a contemporaneous exchange of payment at the beginning of each month in return for the consumer's ability to occupy the property for that period." (Dkt. 14, at 11.) To buttress their argument, Respondents cite, *inter alia*, a group of cases and regulations suggesting that residential leases and rent-to-

own agreements do not constitute "credit" agreements. AFDs, in their view, should be treated similarly, leaving the Bureau without authority to issue the CIDs.

The Court finds that this argument is misplaced. Respondents are raising a premature defense to an enforcement action, rather than a challenge to the Bureau's investigative authority. Whether Respondents' transactions *actually* involve "credit" is not at issue, and it would be premature for the Court to decide that question at this stage. *EEOC v. Karuk Tribe Hous. Auth.*, 260 F.3d 1071, 1076 (9th Cir. 2001) (stating that the Supreme Court has "consistently reaffirmed" that "courts should not refuse to enforce an administrative subpoena when confronted by a fact-based claim regarding coverage or compliance with the law") (citing, *inter alia*, *United States v. Morton Salt Co.*, 338 U.S. 632, 652-53 (1950)); *FTC v. Texaco*, 555 F.2d 862, 872 (D.C. Cir. 1977) (stating that courts considering petitions to enforce administrative subpoenas should not consider the ultimate question of whether the subpoenaed entity's activities are in fact covered by the statute).

Instead, the question when an agency's investigative action is challenged is whether there is "some plausible ground for jurisdiction or, to phrase it another way, [whether] jurisdiction is plainly lacking." *Karuk Tribe Hous. Auth.*, 260 F.3d at 1077 (internal quotation marks and citations omitted); *FTC v. Ken Roberts Co.*, 276 F.3d 583, 587 (D.C. Cir. 2001) ("[E]nforcement of an agency's investigatory subpoena will be denied only when there is 'a patent lack of jurisdiction' in an agency to regulate or to investigate."); *see also EEOC v. Sidley Austin Brown & Wood*, 315 F.3d 696, 700 (7th Cir. 2002) ("Only if ... the information that the subpoenaed firm resists furnishing is not even arguably relevant ... can the court resolve the issue then and there without insisting on further compliance with the subpoena.") (internal citations omitted).

Here, the Bureau's jurisdiction for issuing the CIDs is not plainly lacking because there are plausible grounds to believe that Respondents may have information related to a violation of the CFPA, TILA, or ECOA. The Court believes that both versions of Harbour's AFD might constitute "credit" under those laws because they obligate the purchaser to pay a principal sum plus interest through deferred monthly payments. And the promissory note accompanying the first AFD supplies additional grounds for believing that Respondents offer "credit." That note includes an acceleration clause that gives the seller the option to demand the full purchase price once the purchaser misses a payment. Such a clause strongly suggests that Respondents are supplying "credit," and whether Respondents have exercised the clause is irrelevant at this stage. *Karuk Tribe Hous. Auth.*, 260 F.3d at 1076; *Texaco*, 555 F.2d at 872; *see also Morton Salt Co.*, 338 U.S. at 642-43 ("[An agency] can investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not.").

As to the primary case on which Respondents rely, *CFPB v. Accrediting Council for Indep. Colleges & Sch.*, it is both nonprecedential and inapposite. 183 F. Supp. 3d 79 (D.D.C. 2016). There, the United States District Court for the District of Columbia found that the Bureau did not have the authority to issue a CID to an accreditor of for-profit colleges. *Id.* at 84. The CID in question had the stated purpose of determining whether a person or entity was engaged in unlawful acts and practices "in connection with accrediting for-profit colleges." *Id.* at 82. The court ultimately found that jurisdiction for that CID was plainly lacking because the Bureau was not authorized to investigate "the accreditation process generally." *Id.* at 84. Had the CID sought information related to "potential violations of the consumer financial laws by the schools it accredits," the result

7

may have been different. *Id.* at 83. Here, the Bureau has not so plainly exceeded its statutory authority. The CIDs issued to Respondents seek information related to potential violations of consumer financial laws arising from "the marketing, offering, servicing, or collection of loans for the purchase of residential properties, or similar products and services." (Dkt. 1-7; Dkt. 1-8; Dkt. 1-9.) Such an investigation more likely accords with the Bureau's statutory duty to regulate the provision of consumer financial products and services. 12 U.S.C. § 5491(a).

In light of the foregoing, the Court concludes that the Bureau's authority to issue the CIDs is not "plainly lacking." *Karuk Tribe Hous. Auth.*, 260 F.3d at 1076. Without deciding the question of whether Respondents' transactions actually involve "credit," the Court finds that there are plausible grounds to believe that Respondents may have information related to a violation of the CFPA, TILA, or ECOA. 12 U.S.C. § 5562(c)(1).

**B. Fair Notice**

Respondents next argue that they did not receive fair notice that financial consumer protection laws cover AFDs. But this argument is premature because the Bureau has yet to bring an enforcement action. All of the cases Respondents cite where courts found that agencies failed to provide "fair notice" of prohibited conduct involved an enforcement action or lawsuit. *See Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142 (2012) (employees brought action alleging violations of the Fair Labor Standard Act's overtime provision); *FCC v. Fox TV Stations, Inc.*, 567 U.S. 239 (2012) (FCC found display actionably indecent and imposed a forfeiture); *Landgraf v. USI Film Products*, 511 U.S. 244 (1994) (employee brought action alleging violations of Title VII); *PHH Corp. v. CFPB*, 839 F.3d 1 (D.C. Cir. 2016) (the Bureau brought an enforcement action).

Here, the Bureau has not advanced beyond the investigative stage, and whether Respondents had fair notice regarding the application of federal consumer financial laws to AFDs does not bear on whether they might have information relevant to the Bureau's investigation. *See United States v. Constr. Prod. Research*, 73 F.3d 464, 470 (2d Cir. 1996) ("[T]he coverage determination should wait until an enforcement action is brought against the subpoenaed party."). Unless and until the Bureau brings an enforcement action, the Court must reject Respondents' "fair notice" argument as premature. *See Ken Roberts Co.*, 276 F.3d at 586 ("[A]gencies should remain free to determine, in the first instance, the scope of their own jurisdiction when issuing investigative subpoenas."); *Texaco*, 555 F.2d at 874 (stating that agencies have a "legitimate right to determine the facts, and that a complaint may not, and need not, ever issue").

### C. Undue Burden

Harbour finally argues that, even if the Bureau has the authority to issue the CIDs, the CID it received should be modified because it is unduly burdensome. (*See* Dkt. 13, at 22-24.) Specifically, Harbour contends that the length of coverage (almost seven years of information) is overbroad and that the production deadlines (30 days) are unreasonable. (*Id.*) For the following reasons, the Court finds that the CID is not unduly burdensome.

In deciding whether CIDs impose undue burdens, courts in the Sixth Circuit must weigh the likely relevance of the requested material to the investigation against the burden of producing the material. *Doe*, 253 F.3d at 267 (citing *EEOC v. Ford Motor Credit Co.*, 26 F.3d 44, 47 (6th Cir. 1994)). If there is a "strong likelihood" that the requested documents are "relevant to the [agency]'s investigation," and the respondent has "made no specific showing that this request is unduly burdensome," then the court should enforce the

subpoena. *In re Admin. Subpoena*, 289 F.3d 843, 846 (6th Cir. 2001). Furthermore, a court need not modify or reject a CID where its target has offered "rather general and conclusory" claims that the CID is unduly burdensome. *Doe*, 253 F.3d at 269.

Harbour first argues that the Bureau's demand for information related to Respondents' activities since January 1, 2010 is unduly burdensome because it exceeds the applicable period for which the Bureau can hold them liable. But the relevant inquiry is not whether all the information sought is actionable. *Texaco*, 555 F.2d at 882 ("Broadness alone is not sufficient justification to refuse enforcement of a subpoena."). Instead, the issue is whether such information is relevant to conduct for which liability can be imposed. *See id.* ("The burden of showing that the request is unreasonable is ... not easily met where, as here, the agency inquiry is pursuant to a lawful purpose and the requested documents are relevant to that purpose."). Here, Harbour began acquiring and selling properties as early as 2010, so information dating back to that period will help the Bureau develop a complete understanding of Respondents' practices and operations. As a result, the Court finds that such material is likely relevant to the Bureau's investigation, despite the statute of limitations. *See NLRB v. Line*, 50 F.3d 311, 314-15 (5th Cir. 1995) (affirming enforcement of subpoena seeking five years of information where applicable statute of limitations was six months).

The evidence of burden to Harbour, on the other hand, is very slight. Harbour alleges in its brief that there are significant costs associated with checking the requested materials for privilege and responsiveness, as well as with converting those materials into the forms demanded by the CID. Harbour asserts vaguely that it will have to covert "numerous gigabytes of data" at "$400 per gigabyte." (Dkt. 13, at 23-24.) But Harbour has

10

submitted no evidence corroborating its claims, nor is the Court convinced that those costs amount to a heavy burden. *See EEOC v. Randstad*, 685 F.3d 433, 452 (4th Cir. 2012) (finding that affidavit "assert[ing] only that compiling the requested information would require three employees to spend 40 hours each, at a total cost of $14,000 to $19,000 ... was insufficient as a matter of law to support a finding that the costs of compliance rise to the level of an undue burden"). Weighing the likely relevance of the information sought against the slight burden imposed, the Court finds that the demands for information dating back to 2010 do not impose an undue burden. *See EEOC v. Maryland Cup Corp.*, 785 F.2d 471, 477, 479 (4th Cir. 1986) (rejecting argument that administrative subpoena was unduly burdensome where employer failed to show that gathering the information either (1) was "unduly burdensome in the light of the company's normal operating costs," or (2) would "threaten" or "seriously disrupt" its "normal business operations").

Harbour next asserts that it cannot achieve full compliance with the Bureau's requests within 30 days. It argues: "Harbour has four employees. Even if every employee devoted her full attention to complying with the CID, and nothing else, Harbour would be unable to achieve full compliance within the specified timeframe." (Dkt. 13, at 24.) The Court is not compelled by this "rather general and conclusory" argument. *Doe*, 253 F.3d at 269; *In re Admin. Subpoena*, 289 F.3d at 846 (enforcing administrative subpoena where "brief offer[ed] nothing more than conclusory assertions that the production of documents requested in this subpoena would force [the target] 'to put his life, both professionally and personally on hold'"). The CID issued to Harbour includes only 12 interrogatories, 16 document requests, and 4 requests for written reports. Even if Harbour has only four

employees, thirty days provides ample time to respond to the Bureau's modest demands. Therefore, the Court will not modify the CID on this ground.

In sum, the Court believes that the likelihood that the requested materials will be relevant to the Bureau's investigation outweighs the burden imposed on Harbour. *Doe*, 253 F.3d at 267. The Court therefore rejects Harbour's "undue burden" arguments.

## IV. Conclusion

For the reasons stated above, the Court rejects all of Respondents' arguments against enforcing the CIDs. And given that Respondents have not argued that the Bureau seeks irrelevant information, seeks information already in the Bureau's possession, or is abusing the Court's process, no other consideration militates against enforcement. *Id.* at 265. Therefore, the Court GRANTS the Bureau's petition to enforce the CIDs and ORDERS Respondents to comply with the CIDs within 30 days.

SO ORDERED.

        s/Nancy G. Edmunds
        Nancy G. Edmunds
        United States District Judge

Dated: February 15, 2017

I hereby certify that a copy of the foregoing document was served upon counsel of record on February 15, 2017, by electronic and/or ordinary mail.

        s/Carol J. Bethel
        Case Manager